**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Steven Fiore,<br><br>              Plaintiff,<br><br>v.<br><br>Apollo Education Group Incorporated,<br><br>              Defendant. | No. CV-14-02262-PHX-NVW<br><br>**MEMORANDUM** |

**I**

Plaintiff seeks relief for violation of the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 et seq. Representing Defendant are two lawyers from the Phoenix office of Littler Mendelson PC, an international law firm with over 1,000 attorneys and 375 equity shareholders in sixty-plus offices around the world. The firm practices labor and employment law, representing employers. It generally does not work on a contingent fee, and this is a defense case. In this Memorandum I address whether I am disqualified because my brother-in-law, who has no role in this case, is an equity shareholder in the firm, in an office in another state. I conclude that I am not disqualified.

When my brother-in-law joined the firm six years ago, I looked into whether that disqualified me from the firm's cases. The governing provision of the Code of Conduct for United States Judges is Canon 3C(1), which states generally that a judge "shall disqualify himself or herself in a proceeding in which the judge's impartiality might

reasonably be questioned." The Canon elaborates that disqualification extends to, but is not limited to, matters in which "the judge or the judge's spouse, or a person related to either within the third degree of relationship, or the spouse of such a person is: . . . known by the judge to have an interest that could be substantially affected by the outcome of the proceeding." Canon 3C(1)(d)(iii). The Canon explains that "the following relatives are within the third degree of relationship: parent, child, grandparent, grandchild, great grandparent, great grandchild, sister, brother, aunt, uncle, niece, and nephew." Canon 3C(3)(a). The disqualification statute is substantively identical. *See* 28 U.S.C. § 455. My brother-in-law is within that degree of relationship.

The questions then are whether (1) an equity partnership interest in a law firm representing a party is "an interest" in the proceeding and (2) that interest "could be substantially affected by the outcome of the proceeding." Canon 3C(1)(d)(iii); 28 U.S.C. § 455(b)(5)(iii). Based on the text of the Canon and the statute, and in the specific circumstances of the Littler Mendelson firm, I concluded that my brother-in-law's equity partnership "interest" could not "be substantially affected by the outcome of the proceedings."

Thus it stood for five years, during which time I presided in several cases each year in which the firm was counsel. I sometimes mentioned in court that my brother-in-law is a partner in the firm, and the firm always informed opposing parties. My participation was never questioned.

**II**

**A**

Last year I learned that my conclusion was later contradicted by Advisory Opinion No. 58 of the United States Committee on Codes of Conduct, issued after I researched this issue. The Committee consists of federal judges appointed by the Chief Justice of the United States "to provide advice on the application of the Code of Conduct for United States Judges." *In re Bernard*, 31 F.3d 842, 844 (9th Cir. 1994). It is not charged with

giving advice on the disqualification statute, but the statute and the Code of Conduct are substantively identical. The Committee's scholarship, judgment, and independence are great help to two thousand five hundred federal judges. "Although judges are neither required to consult the committee nor bound by its rulings, the committee provides invaluable guidance and a detached viewpoint." *Id.*

Advisory Opinion No. 58 addresses questions "regarding recusal based on employment by a law firm of a relative of the judge." United States Comm. on Codes of Conduct. Op. 58 (June 2009). "If the relative is an associate or non-equity partner and has not participated in the preparation or presentation of the case before the judge, and the relative's compensation is in no manner dependent upon the result of the case, recusal is not mandated."[1] *Id.* But the Committee concluded that "an equity partner in a law firm generally has 'an interest that could be substantially affected by the outcome of the proceeding' in all cases where the law firm represents a party before the court." *Id.* Therefore, "if the relative . . . is an equity partner in a law firm that represents a party, the judge must recuse." *Id.*

Advisory Opinion No. 58 states a categorical rule of recusal when a relative within the third degree of relationship is an equity partner in a law firm in the case, notwithstanding his residence in a different office and lack of any involvement or effect on his income.

**B**

Another district judge has already found the per se rule of disqualification in Advisory Opinion No. 58 to be an erroneous interpretation of Canon 3C(1)(d)(iii). In *Melendres v. Arpaio*, No. CV-07-2513-PHX-GMS, 2012 WL 2577364, 2012 U.S. Dist. LEXIS 91785 (D. Ariz. July 3, 2012), plaintiffs were represented by the Redwood Shores, California, office of Covington & Burling LLP, an "international firm with

---

[1] Advisory Opinion No. 58 appears to use "equity partner" to mean any attorney who receives a share of a firm's profits, rather than a fixed salary, regardless of the firm's form of organization.

- 3 -

1 multiple offices, over 200 partners and hundreds of other attorneys who were either
2 associates or of counsel to the firm." 2012 WL 2577364, at *1-2, 2012 U.S. Dist. LEXIS
3 91785, at *4, 7. Observing that "even though an opinion of the United States
4 Commission on Codes of Conduct is advisory in nature, it should be considered
5 carefully," 2012 WL 2577364, at *4, 2012 U.S. Dist. LEXIS 91785, at *11, Judge
6 Murray Snow concluded that Canon 3C(1) did not require him to recuse. His brother-in-
7 law worked in a different office and a different practice area, the plaintiffs were seeking
8 only injunctive relief, any attorney's fees the firm might be awarded were "both
9 speculative and very small," and the firm had taken steps to "screen" his brother-in-law
10 from the case. 2012 WL 2577364, at *2, 4-5, 2012 U.S. Dist. LEXIS 91785, at *7, 14.

11 Circumstances like those in *Melendres* were not discussed in Advisory Opinion
12 No. 58, which stated its conclusion summarily. Therefore, I asked the Committee in
13 February 2014 for an opinion on whether Advisory Opinion No. 58 would call for recusal
14 even when, in the Committee's summary, "the relative works in a different office and city
15 from that of the lawyers before [the court] and where the compensation of the law firm in
16 the matter before [the court] is not contingent on the outcome of the litigation."

17 In a letter dated March 11, 2014, the Committee advised that it "adheres to its
18 view that disqualification is necessary where a relative of the judge is an equity partner of
19 a law firm that represents a party before that court." Referring to Advisory Opinion No.
20 58's conclusion that an equity partner "generally has 'an interest that could be
21 substantially affected by the outcome of the proceeding,'" the Committee explained:

> This "general interest" reflects the big picture—the equity partner's stake in
> the law firm's profits as well as in its continued existence, which requires
> lasting client relationships and a respected name in the profession. An
> equity partner has this general interest in his or her law firm as long as he or
> she has an equity stake in the law firm.

The Committee acknowledged that "judges occasionally have declined to follow the
Committee's advice in this regard," but it rejected the rationales on which those judges
have relied:

- 4 -

> For instance, rationales that focus on an equity partner's monetary interest in a given case disregard the effects the case may have on the law firm's client list or goodwill. Similarly, rationales that focus on the number of lawyers or offices a law firm has disregard the ability of lawyers on the east coast to represent clients in courts on the west coast and of law firms to staff matters across offices. An equity partner stands to benefit when his or her law firm does good work no matter who does that work or where that work is done.

Therefore, the Committee wrote, "one might reasonably question a judge's impartiality when his or her relative is an equity partner in a law firm that represents a party before that court."

I then recused in pending cases until I could give the Committee's interpretation the thorough study it deserves. I do so now.

The Committee's letter of March 11, 2014, describes some of the benefits flowing from a rule of universal disqualification when a relative within the third degree of relationship is an equity partner in a law firm in a proceeding, regardless of circumstances. There are other benefits as well. Every per se rule has ease of administration. Overbroad rules protect judges from criticism even when criticism would lack weight if examined. They protect judges from good faith error or arguable error in close cases by allowing fewer close cases.

But a bright-line rule of disqualification also has costs, not so much for judges as for litigants and lawyers. The consolidation of law practice into ever-larger law firms dilutes the true benefit to judicial impartiality from an increasingly overbroad per se rule. An overbroad rule is also susceptible to strategic manipulation. A judge can be avoided by retaining a law firm in which a far-away relative of the judge is an equity partner. A law firm must advise a potential client to retain other counsel if the client does not want a change of judge. These unintended consequences of a per se rule may not occur frequently. But the judicial partiality that the per se rule avoids and that a circumstance-based rule would not avoid is probably less frequent.

It is a matter of judgment how to balance the costs and benefits of a per se rule against those of a circumstance-based rule. The rule-making and legislative processes

1  allow for airing, weighing, justifying, and answering for those choices. I need not say
2  which choice is better. But I am obligated to judge whether Canon 3C(1)(d)(iii) and 28
3  U.S.C. § 455(b)(5)(iii) have already enacted a per se rule of disqualification. To resolve
4  this question, I must weigh the conflicting analyses of the Committee majority and of the
5  *Melendres* court. Upon careful consideration, I conclude the *Melendres* court has the
6  better of it.

**III**

The Code of Conduct sometimes lays down per se rules requiring automatic recusal. A lawyer's mere participation in a case disqualifies the judge when (1) the judge's relative is "acting as a lawyer in the proceeding" or (2) "a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter." Canon 3C(1)(d)(ii), (b); *see* 28 U.S.C. § 455(b)(5)(ii), (2). Recusal is also mandated when "the judge . . . or the judge's spouse or minor child . . . has a financial interest in the subject matter in controversy or in a party to the proceeding." Canon 3C(1)(c); *see* 28 U.S.C. § 455(b)(4). A financial interest is "a legal or equitable interest, however small," with stated exceptions. Canon 3C(3)(c); 28 U.S.C. § 455(d)(4). This is the paradigm of a per se rule. It disqualifies a judge if he, a spouse, or a minor child has even one share of stock in a party, even if the outcome of the action could not have a substantial effect—or any effect—on the stock interest. Other per se rules provide for disqualification when a relative within the third degree of relationship is a party or an officer, director, or trustee of a party, and when the judge previously served in a governmental capacity concerning the proceeding. Canon 3C(1)(d)(i), (e); 28 U.S.C. § 455(b)(5)(i), (3).

In other places, the Code of Conduct states general criteria that require judgment and balance to apply. The prime example is the central standard in Canon 3C(1): whether "the judge's impartiality might reasonably be questioned." *See also* 28 U.S.C. § 455(a). Discretion is also necessary to decide whether the judge, the judge's spouse or minor

child, or any relative within the third degree of relationship has another interest "that could be substantially affected by the outcome of the proceeding." Canon 3C(1)(c), (d)(iii); *see* 28 U.S.C. § 455(b)(4), (5)(iii). The official Commentary to Canon 3C(1)(d)(ii) explicitly confirms that the Canon does not disqualify a judge merely because a relative is a lawyer in the law firm:

> **Canon 3C(1)(d)(ii).** The fact that a lawyer in a proceeding is affiliated with a law firm with which a relative of the judge is affiliated does not of itself disqualify the judge. However, if "the judge's impartiality might reasonably be questioned" under Canon 3C(1), or the relative is known by the judge to have an interest in the law firm that could be "substantially affected by the outcome of the proceeding" under Canon 3C(1)(d)(iii), the judge's disqualification is required.

As the official Commentary to Canon 1 cautions, "The Canons are rules of reason. They should be applied consistently with constitutional requirements, statutes, other court rules and decisional law, and in the context of all relevant circumstances."

It stretches the language of Canon 3C(1) to hold that merely being an equity partner of the lawyer, without more, is an automatically disqualifying "interest" that "could be substantially affected by the outcome of the proceeding." Such a prohibition would more sensibly be stated in Canon 3C(1)(d)(ii), which speaks directly to disqualification from the relative's role as a lawyer. It would be odd drafting to write Canon 3C(1)(d)(ii) with precision to cover acting as a lawyer in the proceeding, but then—by compound implications in Canon 3C(1)(d)(iii)—to sweep far beyond that precision in another per se rule for persons in partnership with the lawyer. Again, the official Commentary to Canon 3C(1)(d)(ii) rebuts this strained reading. It also weighs against that reading that the parties could not even remit such a disqualification voluntarily. Canon 3D; *see also* 28 U.S.C. § 455(e). Yet Advisory Opinion No. 58, as elaborated in the Committee's March 11, 2014 letter, counsels per se recusal solely because a relative is an equity partner in a firm in the case.

It is true that even when the client gets no monetary award or the firm will not share in it, the firm always has an interest of sorts in its "client list or goodwill." But it does not follow that the general professional reward of doing good work is always an

"interest" that the Canon regulates or that it will be "substantially affected" by the outcome in every case. Whether a non-participating lawyer's professional reward is an "interest" and whether it would be "substantially affected" must turn on the circumstances of the case, including the relative's relationship with his firm. In some situations, disqualification will usually be necessary, as with a small firm or when the outcome of the case—not just the fact that the firm has a paying client—directly affects how much compensation the firm and the relative receive. In other situations, disqualification will hardly ever be necessary, as in the circumstances of *Melendres*.

The Canon and the statute speak only of "substantial" effects on a relative's interest—not any effect at all, however remote. In "the context of recusal under 28 U.S.C. § 455(b)(4) or (b)(5)(iii), 'where an interest is not direct, but is remote, contingent or speculative, it is not the kind of interest which reasonably brings into question a judge's partiality.'" *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1042 (9th Cir. 2011) (quoting, in parenthetical, *Sensley v. Albritton*, 385 F.3d 591, 600 (5th Cir. 2004)). It "would simply be unrealistic to assume . . . that partners in today's law firms invariably 'have an interest that could be *substantially affected* by the outcome of' any case in which any other partner is involved." *Melendres*, 2012 WL 2577364, at *6, 2012 U.S. Dist. LEXIS 91785, at *18 (emphasis in original) (some internal quotation marks omitted) (quoting *Pashaian v. Eccelston Props., Inc.*, 88 F.3d 77, 83 (2d Cir. 1996)).

Judges are obligated to "hear and decide matters assigned, unless disqualified." *Id.*, 2012 WL 2577364, at *3, 2012 U.S. Dist. LEXIS 91785, at *11 (citing Canon 3A(2)). The court "has 'as strong a duty to sit when there is no legitimate reason to recuse as [it] does to recuse when the law and the facts require.'" *Id.*, 2012 WL 2577364, at *5, 2012 U.S. Dist. LEXIS 91785, at *15 (citing *Clemens v. United States Dist. Court*, 428 F.3d 1175, 1179 (9th Cir. 2005)). "In those instances in which an advisory opinion requested by an individual judge in one case would contradict, or exceed, the text of the Canon as applied to the facts of another, the Court is obliged, in determining what is ethically appropriate, to follow the text of the Canon rather than the contradictory advice

contained in the advisory opinion. Further, the official commentary is entitled to precedence over a contrary advisory opinion in interpreting a Court's ethical obligation in a given circumstance." *Id.*, 2012 WL 2577364, at *3, 2012 U.S. Dist. LEXIS 91785, at *10-11. Advisory Opinion No. 58 "extend[s] the rule beyond the text of the Canon or the official commentary to it." *Id.*, 2012 WL 2577364, at *4, 2012 U.S. Dist. LEXIS 91785, at *12.

## IV

Having decided Canon 3C(1)(d)(iii) and 28 U.S.C. § 455(b)(5)(iii) do not require universal disqualification when a relative within the third degree of relationship is an equity partner in a law firm in a proceeding, I must still apply the Canon and the statute in the circumstances of my brother-in-law, his law firm, and this case. Of course, "section 455(a) claims are fact driven, and as a result, the analysis of a particular section 455(a) claim must be guided . . . by an independent examination of the unique facts and circumstances of the particular claim at issue." *Clemens*, 428 F.3d at 1178. Whether an attorney's interest could be "substantially affected" under Canon 3C(1) is similarly a "fact sensitive inquiry." *Melendres*, 2012 WL 2577364, at *4, 2012 U.S. Dist. LEXIS 91785, at *13.

The circumstances in this case are materially identical to those found insufficient for recusal in *Melendres*. Here, unlike in *Melendres*, the compensation of the firm and of the relative does not change at all depending on the outcome of the proceeding. In *Melendres* the statute potentially allowed fee-shifting for the benefit of the firm, but the prospect was "both speculative and very small." *Id.*, 2012 WL 2577364, at *4, 2012 U.S. Dist. LEXIS 91785, at *14. The parties consented to Judge Snow's continuing on the case, but as he noted, if he was disqualified by Canon 3C(1)(d)(iii), the parties could not remit the disqualification. Canon 3D; *see also* 28 U.S.C. § 455(e). So it would be here, too.

Under the reasoning in *Melendres*, which I adopt, my brother-in-law's equity interest in Littler Mendelson PC would not be substantially affected by the outcome in this case. Therefore I conclude I am not disqualified in the circumstances of Littler Mendelson PC's practice, of my brother-in-law's practice and position with the firm, and of this case. Specific facts may require recusal, which parties may request. The firm must inform the court and opposing parties in this and any other case of any changed or different facts that bear upon recusal.

Dated: April 24, 2015.

Neil V. Wake
United States District Judge